FIRST FEDERAL SAVINGS BANK
OF TENNESSEE

v.

JEFFERSON SAVINGS AND LOAN
ASSOCIATION.

No. CIV–4–85–118.

United States District Court,
E.D. Tennessee,
Winchester Division.

Feb. 11, 1986.

James H. Henry, II, Tullahoma, Tenn., for plaintiff.

Robert G. McDowell, James A. DeLanis, Nashville, Tenn., for defendant.

## MEMORANDUM AND ORDER

HULL, Chief Judge.

This action arises out of the sale of loan participations by a Virginia savings and loan to a Tennessee bank. The Virginia savings and loan, Jefferson, initially purchased the loans from Congressional Mortgage Corporation, where the loans originated. The loans were made on a condominium development project in Dallas, Texas.

The Tennessee bank, First Federal, claims that Jefferson, the Virginia savings and loan, made certain material misrepresentations regarding the loans which induced First Federal to buy its participation interest in the loans; that if First Federal had known the actual facts about these loans it would not have purchased the participation interest; and, that as a result of these misrepresentations as well as Jefferson's failure to comply with certain provisions of the participation agreement (hereinafter "the contract"), First Federal stands to suffer considerable losses. In its complaint, First Federal has asserted intentional or negligent misrepresentation, fraud and deceit, breach of fiduciary duty and breach of contract. The gist of this action is twofold: First Federal claims that Jefferson fraudulently induced it to purchase the loan participation; and, that Jefferson is not complying with the terms of the contract.

First Federal claims that someone from Jefferson telephoned First Federal in Tullahoma, Tennessee, with an offer to sell a participating interest in certain loans; that the oral communication was followed with a written offer in letter form dated June 24, 1983 [1]; that First Federal accepted the offer by executing the acceptance provision of the offer in Tullahoma and mailing it back to Jefferson; that the agreement was thereafter documented by an "Adjustable Loan Participation Agreement," drafted and executed by Jefferson in Virginia, then mailed to First Federal in Tennessee where it was executed by First Federal.

No representative of Jefferson ever came to Tennessee, and no representative of First Federal ever went to Virginia. The making of this agreement, and the minimal negotiations that preceded it, occurred in interstate communications by mail and/or telephone. The contract provided that it was "made in the State of Virginia," *see* Exhibit "B" to plaintiff's complaint, and under its terms Jefferson was to service the loans for First Federal during their duration. This would include remitting payments, monthly reports, loan delinquency reports, etc. to First Federal in Tennessee over a thirty-year period.

Jefferson has moved to dismiss or for summary judgment on the basis that it has not established the minimum contacts necessary to permit the exercise of personal jurisdiction over it in this forum.

Service of process was procured on this defendant under Tennessee's long arm statute, which permits the exercise of jurisdiction to the maximum extent allowed under the Fourteenth Amendment. *Nicholstone Book Bindery, Inc. v. Chelsea House Publishers*, 621 S.W.2d 560 (Tenn. 1981). The issue presented then, is whether *in personam* jurisdiction can be exercised over Jefferson under the aforementioned facts within the bounds of due process.

A three-part test has emerged in Tennessee to determine whether sufficient minimum contacts exist to justify *in personam* jurisdiction based on a single act:

> "First, the defendant must purposefully avail himself of the privilege of acting in the forum state or causing a consequence in the forum state. Second, the cause of action must arise from the defendant's activities there. Finally, the acts of the defendant or consequences caused by the defendant must have a substantial connection with the forum state to make the exercise of jurisdiction over the defendant reasonable."

*Southern Machine Company v. Mohasco Industries, Inc.*, 401 F.2d 374, 381 (6th Cir.1968).

---

**1.** A copy of the letter is attached as Exhibit "A" to plaintiff's complaint.

If the three-part test is satisfied we must then consider whether the exercise of jurisdiction based upon the defendant's contacts comport with "traditional notions of fair play and substantial justice." *International Shoe Co. v. Washington,* 326 U.S. 310, 316, 66 S.Ct. 154, 158, 90 L.Ed. 95 (1945). In such a consideration we will balance the interest of the state in adjudicating the dispute "against the defendant's burden in defending himself in the forum state." *Nicholstone, supra,* at 565, *see also, Burger King Corporation v. Rudzewicz,* 471 U.S. 462, ——, 105 S.Ct. 2174, 2182, 2184, 85 L.Ed.2d 528, 543 (1985).

The entire analysis is somewhat complicated in this case by the fact that the complaint contains both tort and contract claims. As to the tort claim, jurisdiction over Jefferson seems easily found. Personal jurisdiction may be predicated upon T.C.A. § 20–2–214(a)(2) which subjects an out of state defendant to jurisdiction when the claim for relief arises from "any tortious act or omission within this state." *Id.* Plaintiff claims that Jefferson fraudulently induced it to purchase the loan participation. There is no question that the fraudulent inducement occurred in Tennessee when Jefferson made certain representations regarding the loans in its offer to First Federal. Likewise, there is no question that these misrepresentations have caused (or will cause) injury in Tennessee.[2] There is no doubt that the mere "doing of an act or the causing of a consequence in the forum state by the defendant can satisfy the requirements of the 'minimum contacts' test. (footnote omitted)". *Mohasco, supra,* at 380. When a tortious injury has been inflicted within this state, personal jurisdiction lies in Tennessee, *Jasper Aviation, Inc. v. McCollum Aviations, Inc.,* 497 S.W.2d 240 (Tenn.1972), so long as the contact with Tennessee is not fortuitous. *See, World-Wide Volkswagen Corp. v. Woodson,* 444 U.S. 286, 100 S.Ct. 559, 62 L.Ed.2d 490 (1980). It would indeed seem odd if we were to allow an out of state entity, whose sole contact with the state

was a fraudulent act to escape jurisdiction for the reason that it did not have sufficient contacts with the forum. Although the contact in such a case is minimal, it is nonetheless purposeful. The cause of action arises from the defendant's contact with the forum; and, the forum state has a substantial interest in affording its citizens convenient and effective redress in these circumstances. As to the tort claim, this analysis makes clear that the three-part test of *Mohasco* is satisfied, and jurisdiction is proper.

In *Jasper Aviation, supra,* the Tennessee Supreme Court faced a similar situation. An out of state defendant placed an advertisement for the sale of a certain aircraft in a trade publication which was circulated in Tennessee and throughout the United States. The Tennessee plaintiff purchased the aircraft over the phone from Tennessee. As it turned out, the defendant had made certain misrepresentations about the aircraft in the advertisement. The aircraft, of course, would have been worth more if it had conformed to defendant's representations. Plaintiff brought suit in Tennessee to recover damages suffered as a result of the misrepresentations made by the out of state seller. Defendant contested personal jurisdiction. In finding that Tennessee had personal jurisdiction over the out of state seller, the Tennessee Supreme Court distinguished the similar case of *Beal v. Caldwell,* 322 F.Supp. 1151 (E.D. Tenn.1970). In *Beal,* as in *Jasper Aviation,* a Tennessee plaintiff purchased an airplane from an out of state seller who had advertised in the trade publication. The District Court in *Beal* found that it lacked personal jurisdiction over the defendant because there were "insufficient contacts as applied to the 'transaction of any business' requirement of T.C.A. § 20–235(a) [recodified at T.C.A. § 20–2–214(a)(1)], whereas the decision in [*Jasper Aviation* was] grounded upon the 'tortious act' requirement of T.C.A. § 20–235(b) [re-

---

**2.** In making these assumptions the Court does not intend to pass on the merits of this case, but

is merely taking plaintiff's complaint at face value, as it must, in ruling on this motion.

codified at T.C.A. § 20–2–214(a)(2) ]". *Jasper Aviation, supra,* at 244.

This points up the difficulty presented by the fact that plaintiff here asserts both tort and contract claims. It seems that when an out of state defendant has committed a tort within the forum which injures a citizen or entity domiciled in the forum, a lesser showing of contact with the forum is required than in a breach of contract case where an out of state entity has contracted with an entity of the forum through interstate communications.

The Supreme Court has, in fact, stated that certain circumstances "sometimes serve to establish the reasonableness of jurisdiction upon a lesser showing of minimum contacts than would otherwise be required." *Burger King,* 471 U.S. at —— – ——, 106 S.Ct. at 2184, 85 L.Ed.2d at 543–4.

The ultimate question in every case is whether it would be reasonable to require the out of state defendant to defend himself in the forum. *See, Int'l Shoe, supra, World-Wide Volkswagen, supra.*

The Court is of the opinion that the exercise of *in personam* jurisdiction is reasonable in this case whether viewed from the tortious act/injury standpoint or the breach of contract standpoint. As to the breach of contract claim, the facts of this case are similar to those presented in the recent Supreme Court decision of *Burger King.*

In *Burger King,* a Michigan franchisee was haled into court in Florida, Burger King's headquarters, when he defaulted on his franchise obligations, even though he had never set foot in the forum in connection with the business relationship with Burger King. The franchise agreement had been negotiated and executed by the parties through interstate communications. In upholding the District Court's exercise of personal jurisdiction over the Michigan franchisee, the Supreme Court noted that jurisdiction "may not be avoided merely because the defendant did not *physically* enter the forum." *Id.,* —— U.S. at ——, 106 S.Ct. at 2184, 85 L.Ed.2d at 543.

Analyzing this type of case from a jurisdictional standpoint requires consideration of the entire contractual process including "prior negotiations and contemplated future consequences, along with the terms of the contract and the parties' actual course of dealing...." *Id.* With this standard for analysis, the Court pointed out that the Michigan franchisee "deliberately 'reached out beyond' Michigan and negotiated with a Florida corporation for the purchase of a long-term franchise;" and that "upon approval, he entered into a carefully structured twenty-year relationship that envisioned continuing and wide reaching contacts with Burger King in Florida." *Id.*

In the instant case, the Virginia savings and loan deliberately reached out beyond Virginia and negotiated with a Tennessee bank for the sale of a loan participation; and, the loan participation agreement envisioned a thirty-year relationship in which the savings and loan would have continuing contacts with the bank in Tennessee by providing servicing on the loans and acting as trustee for the bank in regard to the mortgages.

Obviously, the present contract dispute arises directly from the loan participation agreement which has a substantial connection with this state. Here again, the three-part test of *Mohasco* has been satisfied, and jurisdiction over defendant as to the breach of contract claim may properly be asserted under T.C.A. § 20–2–214(a)(1), "The transaction of any business within the state," and probably T.C.A. § 20–2–214(a)(5) "Entering into a contract for services to be rendered or for materials to be furnished in this state," as well as T.C.A. § 20–2–214(a)(6) "Any basis not inconsistent with the Constitution of this state or the United States."

Defendant attempts to distinguish *Burger King* on the ground that the franchise agreement there provided that Florida law applied and the document was deemed made in Florida which was the forum, whereas in this case, the document provides that it is made in Virginia. The Supreme Court, however, merely looked at

the choice of law provision in the franchise agreement as an indication that the defendant should have reasonably foreseen the possibility of litigation in Florida. Were we sitting in Virginia, this contract's choice of law provision would provide us with help in determining whether jurisdiction could be asserted over the Tennessee bank; however, it is of little consequence in determining whether defendant has established minimum contacts with Tennessee.

The defendant also places great reliance on the decision of a District Court in Pennsylvania which, under similar circumstances found that Jefferson lacked the requisite contact with Pennsylvania to justify the assertion of personal jurisdiction over the Virginia defendant. *Central Pennsylvania Savings Assoc. v. Jefferson Savings and Loan, et al.*, Civil No. 85–0765 (M.D. PA Order of Nov. 18, 1985). This Court is unpersuaded by the reasoning of that court which relied upon a Third Circuit case and failed to mention the recent *Burger King* decision.

Having determined that minimum contacts exist as to both claims, the Court also finds that the interests of this state in adjudicating this dispute outweigh the defendant's burden of defending itself in this forum. The defendant in this case is located in a neighboring state and obviously engages in substantial interstate commercial activities.[3] It seems a minimal burden to require the Virginia defendant to come to Tennessee and account for its actions which were purposefully directed towards the Tennessee plaintiff.

Accordingly, this Court finds that the requirements of the Due Process Clause in relation to the exercise of personal jurisdiction are satisfied in this case. Defendant's motion to dismiss and/or for summary judgment is hereby DENIED.

Since this motion did not involve a disposition of the case on its merits, the Court exercises its discretion pursuant to Rule 12

---

**3.** The two pending suits against Jefferson of which this Court is aware involve approximately

(c), Local Rules, and declines the request for oral argument.

---

$2 million in loan participations.